UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ART OF THE EVENT, INC. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT AND JURY DEMAND**

Plaintiff Art of the Event, Inc. ("Art of the Event"), for its complaint against the Defendant United States of America ("U.S."), alleges, by and through its attorneys, the following:

### I.   INTRODUCTION

1. While employed by Art of the Event, Michelle Higson ("Higson") embezzled $471,925.82 over the course of four years. Higson's scheme was simple: steal Art of the Event's checks, forge the signature of Art of the Event's president, and deposit or cash the checks at local banks. Not only was her scheme simple—it was not her first time. While Higson was embezzling from Art of the Event, the U.S. Attorney's Office for the District of Massachusetts was prosecuting her for a similar embezzlement scheme she conducted against her former employer. Moreover, while Higson was embezzling from Art of the Event she was under the supervision of the agents or employees of the U.S. at the United States Probation and Pretrial Service. During this supervision, the Defendant failed to notify Art of the Event of Higson's history of stealing from her employers—even though Art of the Event was in a *special relationship* as a third party because a special condition of Higson's supervision was that she not be employed in a

bookkeeping position. Moreover, the Defendant never confirmed or reviewed her employment record—a *nondiscretionary* aspect of its duties in supervising Higson—and a direct and proximate cause of Art of the Event's loss.

2. As set forth in detail below, the U.S. is liable for the damages sustained by Art of the Event because: (i) it negligently failed to confirm or review the employment status and history of Higson, and; (ii) it negligently failed to supervise Higson by allowing her to be employed as a bookkeeper, in direct violation of her sentencing guidelines.

## II. PARTIES

3. Art of the Event, Inc. ("Art of the Event") is a Massachusetts corporation duly organized under the existing laws of the Commonwealth of Massachusetts, with its principal place of business at 353 Middlesex Ave., Wilmington, MA 01887.

4. The United States of America (the "U.S.") is a defendant in this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* arising from acts and/or omissions of employees and agents of the U.S. who were working at the United States Probation and Pretrial Services Office located at 1 Courthouse Way, Suite NO.1-200, Boston, MA 02210.

## III. JURISDICTION & VENUE

5. The jurisdiction of this Court is founded upon the Federal Tort Claims Act, 28 U.S.C. §2671, *et seq.* The damages incurred by Art of the Event were caused by the negligent or wrongful acts or omissions of certain employees of the U.S. while acting within the scope of their office or employment, under circumstances where the U.S., if a private person, would be liable to Art of the Event in accordance with the laws of the Commonwealth of Massachusetts.

6. On September 25, 2018, Art of the Event duly presented a Notice of Tort Claims, pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq.*, U.S.C. §2401, and 28 C.F.R.

§14.1, *et seq.*, giving notice of Art of the Event's injuries caused by the negligent or wrongful acts or omissions of certain employees of the U.S. while acting within the scope of their office or employment, under circumstances where the U.S., if a private person, would be liable to the plaintiffs in accordance with the laws of the Commonwealth of Massachusetts. A copy of this Notice is attached as Exhibit A.

7. On December 6, 2018, the U.S. responded to Art of the Event's Notice of Tort Claims, denied the administrative claim, and notified Art of the Event of its rights to file suit within six months.

8. Venue is proper in the District of Massachusetts under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims of the plaintiff occurred in the District of Massachusetts.

### IV. FACTS

9. Art of the Event is a professional event design and event planning service based in Wilmington, MA that was founded in 2003 by its President Gayle Gilberto ("Gilberto") and her husband Arthur Wood ("Wood").

10. In or about 2003, Art of the Event opened a business checking account with Santander, N.A. ("Santander"), at the time known as Sovereign Bank, at a bank branch located at Boston, MA (the "Account").

11. In 2013, Art of the Event hired Higson to be a part-time bookkeeper. Her duties and responsibilities included recording transactions in a general ledger and producing financial statements for Gilberto and Wood. As part of her responsibilities, Higson had access to checks for the Account and Art of the Event's general ledger through the QuickBooks accounting software.

3

12. Art of the Event never authorized Higson to sign checks to be drawn from the Account.

13. Moreover, Art of the Event never authorized Santander to allow Higson to sign checks to be drawn from the Account.

14. Meanwhile, beginning on or about December 2013, and continuing to in or about January 2015, Higson was employed at a different company ("Company A") and executed a scheme to defraud and obtain money from that company by forging 16 checks totaling $60,290.25.

15. Thereafter, beginning in or around 2015 and through August 2018, Higson embezzled funds from the Art of the Event by:

    a. Stealing Art of the Event's checks;
    b. Forging Gilberto's signature on the stolen checks, and making them payable to either herself or her husband, John Higson;
    c. Inputting a corresponding entry in the Art of the Event general ledger for the same check number, date, and amount, as the forged checks but falsely identifying that the check was made payable to either a vendor used by Art of the Event or a fictitious vendor, and;
    d. Cashing or depositing the checks at either Align Credit Union or TD Bank, N.A..

16. In total Higson forged 133 checks (the "Forged Checks") between February 20, 2015 and August 30, 2018 ranging in value from $817.50 to $6,209.00 and averaging $3,519.37 per check. The sum total of the Forged Checks was $471,925.82.

17. Higson started her scheme slowly, forging one check each month in February, March, and April 2015, but her pace accelerated, leading to a flurry of forged checks in the first half of 2018 when she embezzled $57,837.53 between January and June. This included a period in April 2018 when she made seven forged checks that totaled $17,161.47.

18. On September 29, 2016 Higson was indicted by a grand jury in the U.S. District Court of Massachusetts for embezzling money from Company A. At the time she was still employed by Art of the Event. Art of the Event was never notified about this indictment.

19. One year later, on September 8, 2017, Higson pleaded guilty to one count of bank fraud and two counts of uttering forged securities concerning her conduct against Company A. The Court sentenced Higson to three months imprisonment and three years of supervised release. As a special condition of supervision Higson was "prohibited from engaging in occupation, business, or profession that would require or enable [her] to access or manage financial records and payment systems." Higson was also ordered to pay restitution to Company A in the amount of $60,290.25.

20. According to the Government's Sentencing Guideline, Higson "[had] been caught stealing from six of her last eight employers over the last eight years" and that "such a pattern of criminal behavior belies any claim of respect for the law."

21. The sentencing memorandum submitted by Higson's criminal defense attorney incorrectly stated that Higson's duties at Art of the Event "[did] not involve any contact with money."

22. The Defendant never contacted Art of the Event, either before or after Higson's sentencing, to confirm her employment or confirm that her employment satisfied the special conditions of supervision.

23. In June 2018, Gilberto discovered that Higson's payroll checks from the month prior were larger than any other Art of the Event employee.

24. After being confronted about the error, Higson stated it was a bookkeeping mistake.

25. Art of the Event subsequently hired Kimberly Gutheil ("Gutheil") to review the payroll records. Following a review of the records from April 22, 2018 to June 14, 2018, Gutheil discovered that Higson had over-paid herself, without authorization, in the amount of $5,771.50.

26. On June 19, 2018, Art of the Event terminated its employment relationship with Higson.

27. Three days later, Gilberto discovered, through a web-search, that Higson had been indicted in September of 2017 in the U.S. District Court of Massachusetts for embezzling $60,290.25 from a former employer.

28. After learning about Higson's indictment, Gilberto promptly reviewed the account statements provided by Santander and discovered the Forged Checks. Gilberto then alerted the Wilmington Police Department and Santander to these improper and forged checks.

29. On the same day Gilberto was contacted by agents or employees of the Defendant. The agents or employees were unaware idea that Higson was working as a bookkeeper at Art of the Event or that she was embezzling money from the company.

30. Higson embezzled an amount of at least $252,438.08 after the Defendant had a duty to investigate her employment at Art of the Event.

## COUNT I
## NEGLIGENCE

31. Plaintiff repeats, realleges, and incorporates the allegations in the paragraphs above as though fully set forth herein.

32. The Defendant was in a *special relationship* with Art of the Event because it was supervising Higson—an employee of Art of the Event with special conditions order by the Court concerning her employment.

33. The Defendant knew or should have known that there was a significant risk that Higson, as a serial embezzler, would damage Art of the Event if she was employed in a position with access to "financial records and payment systems."

34. The Defendant breached its duty to Art of the Event by failing to confirm or review the employment history of Higson.

35. The Defendant breached its duty to Art of the Event by failing to supervise Higson according to the special conditions in her sentencing guidelines.

36. The Defendant's acts or omissions which constitute its breaches of duty to Art of the Event were *nondiscretionary* because they were required by the Court's sentencing guidelines *and* constitute the core functions of supervised release, i.e. the duty of the probation department.

37. The negligence and breach of duties by the Defendant was a direct and proximate cause of Art of the Event's financial loss of at least $252,438.08.

38. The negligence of the Defendant caused Art of the Event to suffer total damages of $252,438.08.

WHEREFORE, the Plaintiff, Art of the Event, Inc., demands as follows:

i. That this Court enter judgment in favor of Art of the Event and against the U.S. as applicable on all Counts;
ii. That Art of the Event be awarded all damages as determined by this Court, together with costs, interest and attorneys' fees;
iii. That Art of the Event be awarded such other and further relief as is proper and just.

Plaintiff Art of the Event, Inc. demands a trial by jury on all issues so triable.

Respectfully submitted,

ART OF THE EVENT, INC.

By its attorneys,

/s/ Raymond P. Ausrotas

Raymond P. Ausrotas (BBO # 640315)
Kevin Smith, BBO (BBO # 688418)
ARROWOOD LLP
10 Post Office Square, 7th Floor South
Boston, MA 02109
(617) 849-6200
(617) 849-6201
rausrotas@arrowoodllp.com
ksmith@arrowoodllp.com

Dated: June 4, 2019